| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Continental Airlines, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-07-1349 |
| | § | |
| Air Line Pilots Association, International, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.  *Introduction.*

    A pilot signed an agreement requiring him to submit to impromptu, random blood-alcohol testing for five years. If he failed the test, he would be fired. He refused to take one. He was fired. An arbitration panel decided that, because of "mitigating circumstances," he should be reinstated. The airline refused and sued.

    The panel had jurisdiction to consider his excuse; however, the pilot refused to take the test as a unimpeded choice. A mitigating circumstance is a compulsion justifying his not taking it – not an explanation of his mood when he simply and willfully decided to refuse. The panel's decision will be reversed.

2.  *Background.*

    Ron McWhirter is a pilot for Continental Airlines. In September of 2000, he failed an alcohol test. Continental set strict conditions for his continued employment. McWhirter agreed to be tested for alcohol at Continental's direction for five years. If he failed a test, he would be fired.

    In February of 2005, Continental notified McWhirter of a test. He refused. He was fired. Air Line Pilots Assoication, International – for McWhirter – objected and sought arbitration. The panel had to consider two contracts: (a) the supplemental agreement between McWhirter and Continental, and (b) the collective bargaining agreement.

3.  *Standard.*

The panel's decision may be overturned if it: (a) fails to comply with the Railroad Labor Act, (b) exercises jurisdiction over matters not confided to it, or (c) bears the taint of fraud. *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 93 (1978). The decision may also be overturned if it violates public policy. *Manville Forest Prods. Corp. v. United Paperworkers Int'l Union*, 831 F.2d 72, 74 (5th Cir. 1987). Continental argues that the panel exceeded its jurisdiction and decided the matter in violation of the public interest.

4.  *The Agreement.*

The supplemental agreement bears the label Last Chance Agreement. The title does not matter; what matters is what it says – that if McWhirter failed a blood-alcohol test, he would be fired.

It does *not* say that he will be fired for not taking a test. This is likely because circumstances could arise that would prevent him from doing it. For instance, he might be away on vacation or in the hospital – both arguably legitimate reasons for failing to appear.

Continental understands this; in its termination letter to McWhirter, it noted that he had failed to offer a "sufficient explanation" for missing the test. Because McWhirter's explanation was insufficient, Continental would clearly accept some explanation as sufficient.

Continental says that the panel had no jurisdiction to look at mitigation. If McWhirter had failed the blood alcohol test, that would be right – the only issue before the panel would be whether he had failed. On the other hand, if Continental could look at the McWhirter's reasons for missing the test, so too could the panel. It did, and it found that McWhirter's refusal was justified by the circumstances and that Continental must reinstate him. The panel's decision to reinstate McWhirter was not outside its jurisdiction.

5.  *Deference.*

At the end of 2004, Continental learned that McWhirter had been drinking with a fellow pilot. In early 2005, Continental met with McWhirter to discuss this, and he denied having had alcohol. It told McWhirter to take a blood test to confirm his statement. The result was supposed to take a week. Weeks later, before McWhirter had received that result, Continental notified him of another test. McWhirter did not appear at the test site before it closed. He told Continental that he had not taken it because he was "upset" that Continental

had not yet told him the outcome of the earlier test.

The union added that McWhirter did not really refuse the test because he says that he changed his mind and showed up late that afternoon, after the clinic had already closed. This is a gratuitous quibble. Delaying until it was too late is a refusal. More important, delay may vitiate the test.

The only other defense to his firing was his assertion that his missing it is mitigated by his indignation at being retested while another test's results were still unknown. This was accepted by the panel as a justification for his declining to be tested.

The collective bargaining agreement says:

> A pilot who refuses or fails to cooperate in [an] alcohol test as mandated . . . in any rehabilitation related testing by refusing to provide a breath or urine sample . . . will be withheld from service without pay pending investigation. If the investigation fails to find a *valid medical reason* for the pilot's failure to cooperate . . . he shall be terminated. (Contract 97, Part 8, Section 25-6).

Although the agreements between Continental and McWhirter allow the panel to consider his reasons for missing the test, they require those reasons to be authentic, physical ones. Choosing not to attend a test is not medical; nor is "upset" medical, and if it were, it would not justify evading a safety test. The collective bargaining agreement is clear – lacking a verifiable reason recognized by medical science, McWhirter's employment must end. There is nothing to interpret. The panel could not, and did not, interpret his choice as a valid medical reason. The contract says that a refusal may be justified, but it must be based on medicine. This limit excludes a pilot's mood, sense of injustice, and resentment. *See Hill v. Norfolk & W. Ry.*, 814 F.2d 1192-95 (7th Cir. 1987). The decision does not "draw its essence from the agreement." *Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 632 F.2d 1321, 1324. (5th Cir. 1980).

6.  *Public Safety.*

Continental says that the panel's decision is against public policy. That is true. Although public safety is vague and often misused, the reliability of pilots is direct, precise, and essential. That is true here whether it is viewed from the aspect of sobriety or compliance with procedures.

7.  *Conclusion.*

Assuming the panel had authority to over justification, even great deference would not save its decision. As a condition of his employment, McWhirter had agreed to take impromptu alcohol tests. He chose not to attend a required test. Had he given a medical reason for not taking it, the panel could have considered whether it was valid. He did not. It had nothing to decide.

Whatever motivated two members of the panel to risk lives for their misguided sensitivity to the ex-pilot's feelings, their decision trampled an objective, known interest of the airline, union, and public in pilot reliability.

Fundamentally, a choice – freely and willfully made – is not a circumstance; it mitigates nothing. The contracts do not require McWhirter to take test unless he prefers not to.

The panel's decision to reinstate McWhirter will be reversed.


Signed on October 18, 2007, at Houston, Texas.


_____
Lynn N. Hughes   USDJ
United States District Judge